UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHRISTI L. CARLTON, )
 )
    Plaintiff )
 )
v. ) 1:10-cv-00463-GZS
 )
SOCIAL SECURITY ADMINISTRATION )
COMMISSIONER, )
 )
    Defendant )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Christi L. Carlton, a 39 year old woman with severe mental and physical impairments, retains the functional capacity to perform substantial gainful activity, resulting in a denial of Carlton's application for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Carlton commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court vacate the administrative decision and remand for further proceedings.

## The Administrative Findings

The Commissioner's final decision is the June 11, 2010, decision of Administrative Law Judge Kim K. Griswold because the Decision Review Board did not complete its review during the time allowed. Judge Griswold's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims and concludes at the final step of said process. (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1, 7-20.[1])

At step 1 of the sequential evaluation process, the Judge found that Carlton meets the

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

insured status requirements of Title II through September 30, 2012, and has not engaged in substantial gainful activity since December 2, 2007, the date of alleged onset of disability. (Findings 1 & 2, R. 9.)

At step 2, the Judge found that Carlton has the following severe physical/mental impairments: morbid obesity, left-knee arthritis, degenerative changes to the lumbar and thoracic spine, depression, cannabis abuse, and alcohol abuse. (Finding 3, R. 9.) The Judge found that bipolar disorder is not a severe impairment for Carlton. (R. 10.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. The Judge specifically considered listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.09 (substance addition disorders). The Judge also evaluated the impact of obesity upon these listings. (R. 10-11.) Performing the psychiatric review technique, the Judge found that Carlton suffers moderate restrictions in activities of daily living, mild difficulties maintaining social functioning, no difficulties maintaining concentration, persistence, and pace and has had no qualifying episodes of decompensation. (R. 12.)

Preliminary to further evaluation at steps 4 and 5, the Judge assessed Carlton's residual functional capacity. The Judge found that Carlton's combined impairments leave her with a residual functional capacity for light work, except that she is limited to occasional stooping, crouching, crawling, kneeling, balancing, and climbing of ramps and stairs and may never climb ladders, ropes or scaffolds. The Judge's finding also limits Carlton to basic-to-moderately complex, multi-step instructions. (Finding 5, R. 13.)

At step 4, the Judge found that this degree of limitation precluded past relevant work in

insured status requirements of Title II through September 30, 2012, and has not engaged in substantial gainful activity since December 2, 2007, the date of alleged onset of disability. (Findings 1 & 2, R. 9.)

At step 2, the Judge found that Carlton has the following severe physical/mental impairments: morbid obesity, left-knee arthritis, degenerative changes to the lumbar and thoracic spine, depression, cannabis abuse, and alcohol abuse. (Finding 3, R. 9.) The Judge found that bipolar disorder is not a severe impairment for Carlton. (R. 10.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. The Judge specifically considered listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.09 (substance addition disorders). The Judge also evaluated the impact of obesity upon these listings. (R. 10-11.) Performing the psychiatric review technique, the Judge found that Carlton suffers moderate restrictions in activities of daily living, mild difficulties maintaining social functioning, no difficulties maintaining concentration, persistence, and pace and has had no qualifying episodes of decompensation. (R. 12.)

Preliminary to further evaluation at steps 4 and 5, the Judge assessed Carlton's residual functional capacity. The Judge found that Carlton's combined impairments leave her with a residual functional capacity for light work, except that she is limited to occasional stooping, crouching, crawling, kneeling, balancing, and climbing of ramps and stairs and may never climb ladders, ropes or scaffolds. The Judge's finding also limits Carlton to basic-to-moderately complex, multi-step instructions. (Finding 5, R. 13.)

At step 4, the Judge found that this degree of limitation precluded past relevant work in

five occupations. (Finding 6, R. 18.)

Carlton was born in 1971, has at least a high school education (B.S. in nursing), can communicate in English, and has acquired transferrable skills from prior semi-skilled and skilled work, including: multitasking, dealing with people, answering questions, scheduling appointments, making independent judgments and decisions, and attaining precise standards. (Findings 7-9, R. 18-19.) The Judge presented a vocational expert with this vocational profile and the residual functional capacity findings and found, based on the vocational expert's hearing testimony, that Carlton could still engage in other substantial gainful employment, including as a hospital admitting clerk, insurance clerk in a medical environment, medical office receptionist, parking attendant, and telephone solicitor. (Finding 10, R. 19-20.) This step 5 finding resulted in a conclusion that Carlton was not disabled between her alleged onset date and the date of decision. (Finding 11, R. 20.)

## Discussion of Plaintiff's Statement of Errors

Carlton argues that the Judge erred in finding bipolar disorder to be a non-severe impairment and in finding that there is no limitation in relation to concentration, persistence, and pace. (Statement of Errors at 1-2.) She asserts that the diagnosis is established in the treatment record (Ex. 1F); that it was identified as severe by consulting reviewers who assessed moderate limitation in concentration, persistence, and pace (Exs. 3F, 4F, 9F); and that the Judge reported that she attributed significant weight to the reviewers' opinions, without explaining why she differed with them in this regard. (Statement of Errors at 2-4.)

Carlton further argues that the Judge erred in failing to include a concentration, persistence, and pace limitation in the residual functional capacity finding and in failing to point to any expert evidence in support of her assessment that Carlton can understand, remember and

carry out basic-to-moderately complex, multi-step instructions. (Id. at 4.) Carlton also faults the opinion of Scott Hoch, Ph.D. (Exs. 3F and 4F), who additionally assessed moderate difficulties maintaining social functioning in his checkbox findings, but then described an ability to interact appropriately and adequately with others. Carlton says that Dr. Hoch's conflicting assessments are unreliable in the absence of an adequate explanation and that her residual functional capacity should include a restriction against interaction with the general public. (Statement of Errors at 5.)

As for her residual functional capacity for physical exertion, Carlton says that the only reviewing expert opinions of record (Trumbull, Ex. 6F and Chamberlin, Ex. 8F) were drawn without the benefit of additional medical evidence submitted after their assessments were offered, including a chiropractor's treatment notes (Ex. 15F), imaging and assessment of her spinal impairment (Exs. 12F at R. 507-10; 14F; 15F; and 16F), and a course of treatment notes from the primary care provider (Ex. 12F). (Statement of Errors at 6-7.) Carlton also complains of the way in which the Judge dismissed the residual functional capacity assessment of the primary care provider (Ex. 10F). (Statement of Errors at 8-9.) She views this opinion as supported by other substantial evidence, including an opinion offered by a consultative examiner (Ex. 5F). (Statement of Errors at 11.) Carlton also contends that the Judge did not assess the impact of obesity sufficiently. (Statement of Errors at 12-13.)

Carlton lastly complains about the quality of the vocational expert testimony. This final argument gathers up all of the foregoing arguments in support of a proposition that the vocational expert's testimony was based on an erroneous residual functional capacity finding and, therefore, cannot supply substantial evidence in support of the Judge's step 5 finding. (Statement of Errors at 13-14.)

A. The Evidence

In the first half of 2008, Carlton treated with T Kawamura, M.D., of Bangor Psychiatric Associates. (Ex. 1F.) The treatment notes identify bipolar II as among Carlton's mental health diagnoses. (R. 250, 256, 263, 274, 281, 287.) It is not clear that this diagnosis was offered by a physician. It appears that the diagnosis was offered by Robert Magaw, a nurse practitioner. There is, however, an indication that the chart was later reviewed by a physician. (R. 264, 282, 288.)

On September 22, 2008, Scott Hoch, Ph.D., performed the Commissioner's psychiatric review technique on referral from Maine Disability Determination Services. (Ex. 3F.) He found that a mental residual functional capacity assessment was called for and identified the concern as an affective disorder in the nature of a bipolar II diagnosis. He assessed moderate difficulties in maintaining concentration, persistence, and pace on the PRT form and otherwise only mild limitation. (R. 341, 344, 351.) In the checkbox findings of the mental RFC form, Dr. Hoch predicted moderate limitation with *detailed* instructions and maintenance of attention and concentration for *extended* periods. (R. 355.) He also indicated moderate limitation in interacting with the general public. (R. 356.) However, Dr. Hoch offered the following narrative assessment:

> In spite of mood disturbance, able to do the following:
>
> A. Can understand & remember complex tasks. Graduated from nursing school 5/07
>
> B. Able to attend to simple tasks & complete a normal work week. . . .
>
> C. Able to interact appropriately & adequately w/ others.
>
> D. Able to adapt to simple changes, travel, & is aware of hazards. . . .

(Ex. 4F, R. 357.)

On March 16, 2009, David Houston, Ph.D., performed the psychiatric review technique for Maine Disability Determination Services. (Ex. 9F.) His evaluation mirrors that of Dr. Hoch and "affirmed" the earlier residual functional capacity assessment offered by Dr. Hoch. (R. 421.)

Psychiatric treatment progress notes from the Summer Street Clinic, prepared as late as September 2009, indicate major depression, recurrent, and impressions unfavorable to Carlton's claim. (Ex. 11F, R. 429.) The most recent psychiatric treatment record is a letter from a social worker at Northeast Occupational Exchange to Carlton's counsel, indicating the continued presence of a bipolar II "mood diagnosis" with a "presentation falling within the range of clinical depression." (Ex. 16F, R. 548.)

On the physical side, there is an October 2, 2008, consultative examination report from Edward Harshman, MD (Ex. 5F). In addition, there are two subsequent physical residual functional capacity assessments from consulting reviewers Donald Trumbull, MD (Ex. 6F, dated October 17, 2008) and Richard Chamberlin, MD (Ex. 8F, dated January 28, 2009). Dr. Harshman found Carlton to be "a cooperative and severely overweight woman." (R. 359.) He described her physical impairments as back/disk damage and a torn meniscus in the left knee. (Id.) He offered the following assessment:

> Analysis of results: Headaches are probably muscle-tension. Obesity strains the knees, in theory; but the squat test suggests that they are strong and work well. There is a peculiarity of curvature in the thoracic spinal column, which is not necessarily incompatible with normal function.
>
> She can stand and sit with normal breaks, walk probably 500 feet (left knee has no clear findings and she can squat well), reach overhead, lift perhaps 25 pounds (speculative, must lift her own weight too), push, pull, and do fine finger movements. She cannot stoop (thoracic shape I am not sure about), crouch (obesity is an undue burden on knees), or crawl. Speech and comprehension are good.

(R. 360.) Based on Dr. Harshman's report and the existing medical records, Dr. Trumbull provided his physical RFC assessment. He assessed a capacity for light-exertion work and for

standing/walking or sitting for a total of six hours each in an eight-hour work day, plus postural limitations consistent with the Judge's finding. (R. 363-64.) Dr. Chamberlin's subsequent RFC assessment, which was offered in relation to a request for reconsideration, is consistent with Dr. Trumbull's, differing only insofar as he would rule out any ability to negotiate ladders, ropes, and scaffolds. (R. 401, 402.)

Four months later, in May 2009, Lisa Buck, MD, supplied Maine Disability Determination Services with an opinion concerning Carlton's ability to do physical work-related activities. (Ex. 10F.) She opined that Carlton lacked the ability to bear even ten pounds of weight on an occasional basis and that Carlton could not work seated or on her feet for two hours in either position. (R. 423.) Among other limitations, Dr. Buck predicted restrictions in reaching and inability to stoop, crouch, or climb stairs. (R. 424-25.)

The record includes an MRI report of January 26, 2009, describing a "small right paracentral protrusion, T7-8" and "degenerative facets T9-10" with "no significant canal stenosis." (Ex. 12F, R. 507.) Additionally, Carlton was seen in early 2010 by J. Herland, MD, of St. Joseph Hospital's Pain Clinic at the request of a primary care provider. (Ex. 14F.) Dr. Herland's impression was of thoracic pain to the right of midline and cervical spinous process bursitis, which he intended to treat with injection therapy. (R. 524.)

Carlton belatedly introduced chiropractor notes from 2005 (Ex. 15F) in support of her claim, subsequent to record development obtained from the consulting experts by Maine Disability Determination Services. This treatment arose due to midthoracic pain secondary to an automobile accident. Jeffrey Brown, MD, reported Carlton's subjective statement that her pain was level two on a ten-point scale, with ten being the worst. (R. 526.) The records include a radiology report of a CT scan of the thoracic spine, obtained in 2005. (R. 532.)

7

B.  Discussion

Carlton argues that the Judge's findings are not supported by substantial evidence because the Judge omitted bipolar II as a severe mental impairment at step 2, omitted a concentration, persistence, and pace limitation in the residual functional capacity finding, omitted a limitation against interaction with the general public, and omitted a limitation to simple work.  Additionally, Carlton says the impact of her obesity was not adequately accounted for and that the latest medical records, including the opinion of her treatment provider, undercut the reliability of the opinions offered by the consulting examiner and reviewers.

*1.  Mental impairment*

The Judge's omission of the bipolar diagnosis is not in keeping with the longitudinal record or the assessments offered by the expert consultants.  On the other hand, the most recent psychiatric treatment note suggests that Carlton's bipolar disorder is characterized by depressive episodes, which tends to explain the Judge's characterization of "depression" as the operative mood disorder.  This error would not necessarily call for remand.  However, the Judge departed from the assessment of the medical experts when she made her residual functional capacity finding.  Dr. Hoch and Dr. Houston concurred in the opinion that Carlton, despite having the intellect to understand and remember complex tasks, would not be successful sustaining concentration and persistence for extended periods in such tasks.  In their view, Carlton is "able to attend to simple tasks."  (R. 357, 421.)  While Dr. Hoch's assessment also reads:  "See above," presumably referencing the ability to understand and remember complex tasks (R. 357), that does not supply substantial evidentiary support for an inference that Carlton has the capacity to persist at "moderately-complex, multi-step instructions," which is the way the Judge framed her residual functional capacity finding.  (R. 13.)

As for the issue of social limitation, both Dr. Hoch and Dr. Houston assessed mild limitations in social functioning in their psychiatric review technique forms. (R. 351, 419.) However, on the mental residual functional capacity form, Dr. Hoch marked the checkbox for "moderate" limitation in the ability to interact with the general public. (R. 356) He then wrote in his narrative findings that Carlton could "interact appropriately & adequately w/ others." (R. 357.) Dr. Houston embraced these findings. (R. 419.)

It is Carlton's burden to supply the medical evidence needed to establish her impairments and the degree to which they limit her functional capacity, though the Commissioner has an obligation to facilitate the development of the record, such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment. Id. §§ 404.1545(a)(3), 416.945(a)(3). Here, the Commissioner obtained the opinions of Dr. Hoch and Dr. Houston concerning Carlton's psychiatric treatment records. They have assessed that significant difficulty in public interaction may exist for Carlton, but that she would still be able to perform adequately on a social level. In the absence of contradictory medical opinion evidence on functioning or treatment/examination reports persuasively indicating otherwise,[2] the opinions offered by Drs. Hoch and Houston are not rendered less than persuasive from a lay perspective and supply substantial evidence in support of the Judge's omission of a social limitation in her residual functional capacity finding.

2. *Physical impairment*

Carlton complains that the examination report of Dr. Harshman and the physical residual functional capacity assessment of Dr. Trumbull are not substantial evidence in light of medical

---

[2] Carlton does not cite portions of the record, such as the most recent progress notes from Northeast Occupational Exchange (Ex. 13F) or the letter report from a counselor in that organization (Ex. 16F), to support her alleged social limitation. These recent records do not emphasize social limitations. Moreover, there is evidence in the report from treating sources expressing skepticism with the idea that Carlton is mentally disabled from work activity. (Ex. 11F, R. 438.)

evidence that has entered the record subsequent to Dr. Trumbull's review. Of note is a finding of cervical spinous bursitis to complement the existing thoracic disk herniation (Ex. 14F, R. 524), a letter from a chiropractor suggesting improvement upon conservative treatment (Ex. 15F, R. 526), and an MRI of January 26, 2009, describing a "small right paracentral protrusion, T7-8" and "degenerative facets T9-10" with "no significant canal stenosis."[3] (Ex. 12F, R. 507.) As for the MRI, Lisa Buck, MD, has noted the absence of any evidence of nerve impingement. (Ex. 12F, R. 492.) Still, Dr. Buck has supplied an opinion concerning Carlton's physical residual functional capacity, assessing less than sedentary capacity based on mid-back pain complicated by obesity. (Ex. 10F, R. 423-24.) In this particular case, I am not persuaded that the more recent development undermines the reliability of Dr. Harshman's examination report or the subsequent consultant assessments related to weight-bearing, sitting, standing, or walking offered by Dr. Trumbull (Ex. 6F), and Dr. Chamberlin (Ex. 8F). In addition to the assessments offered by these experts, the Judge adequately explained why she did not assess a more significant degree of functional limitation associated with the knee and back conditions. (R. 15.)

Despite the foregoing, there is a concern about the degree of Carlton's postural limitation. Dr. Chamberlin and Dr. Trumbull did not supply any explanation for their rejection of Dr. Harshman's earlier finding that Carlton "cannot stoop . . ., crouch (obesity is an undue burden on knees), or crawl." (R. 360.) The record provides substantial evidence of these postural limitations in the form of Dr. Harshman's assessment and Dr. Buck's assessment (based on examination), but not substantial evidence of their absence. The Judge saw it differently "based on the objective medical evidence as a whole" (R. 17), but there is no indication of what that objective medical evidence is.

---

[3] By comparison, a prior CT scan performed in 2005 described right-sided anterior spurring at multiple levels of the thoracic spine. (Ex. 15F, R. 532)

10

*3.     Capacity for substantial gainful activity*

The Commissioner made the finding of not disabled at step 5 of the sequential evaluation process.  At step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform.  20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).  Ordinarily, the Commissioner will meet the step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's residual functional capacity, age, education, and work experience would be able to perform other work existing in the national economy.  Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).  At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's residual functional capacity.  Id.

Based on the foregoing discussion, the Judge's residual functional capacity finding suffered from the omission of a mental limitation to simple tasks and a physical limitation precluding stooping, crouching, and crawling.  The vocational expert therefore was asked to consider the wrong residual functional capacity, which may or may not undermine his testimony that someone with Carlton's restrictions could work in the occupations of hospital admitting clerk, insurance clerk in a medical environment, medical office receptionist, parking attendant, and telephone solicitor.  It appears likely that all but the last two would be impacted by a concentration and attention restriction to simple work and possible that the telephone solicitation occupation (described as semi-skilled) would be impacted as well.  It also appears conceivable that the preclusion of stooping might negatively impact the parking attendant occupation. Whether any of the identified occupations would actually remain with the proper hypothetical

and whether other occupations would exist in significant number are issues most appropriately addressed in the context of further administrative proceedings.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court vacate the Commissioner's final decision and remand for further proceedings consistent with the foregoing discussion.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 21, 2011